### CONFLICT OF RIGHTS OF WAY FOR STREET RAILWAYS.

THE HAMILTON, GLENDALE & CINCINNATI TRACTION CO. v. THE
HAMILTON & LINDENWALD ELECTRIC TRANSIT CO.

69 Ohio State—Decided, January 19, 1904.

*City Council Grants Right of Way Through Street to Railway Company—Acceptance by Grantee—Subsequent Grant to Council to Second Railway Company—Over Same Right of Way—Second Grant of City Does Not Confer Right for Grantee to Enter upon Right of Way, When—Conflict of Rights of Way Between First and Second Grantees—Second Grantee Restrained by Injunction, When.*

When a city council has, by ordinance, legally granted to one street railway company the right to construct its railway and lay its track on and over a particular part of a designated street within said city, and such company has duly accepted said grant and entered upon and taken possession of the right of way so specifically granted, a subsequent grant by said city council, or its successor in office, the board of control, of the same right of way, or a substantial part thereof, to another street railway company for like purposes, will not of itself confer upon the second grantee the right to enter upon and take possession of the route or right of way so granted, where such entry and possession by it will materially and injuriously interfere with, interrupt and abridge the first grantee's use and enjoyment of the said right of way. And where said second grantee threatens and is about to take possession of said route and right of way under and by virtue of its said grant, without the consent and against the will of said first grantee, and without having appropriated the right so to do, it will be restrained from so doing by injunction.

Error to the Circuit Court of Butler County.

On the fourth day of August, 1891, the city council of Hamilton, Ohio, by ordinance duly passed, granted to The Hamilton & Lindenwald Electric Transit Co., defendant in error, the right to construct, operate and maintain an electric street railroad in, upon and along East avenue, from Grand boulevard to John street and beyond, within said city, and in pursuance to said grant the city authorities located said street railroad in the central portion of said East avenue.

In accordance with said grant and location the defendant in error immediately thereafter constructed in said central portion of said East avenue an electric street railroad with a gauge of

four feet eight and one-half inches, and in accordance with the terms and conditions of said ordinance it has ever since been, and is now engaged in operating and maintaining its said street railroad in, upon and along the central portion of said avenue.

The franchise so granted to said street railroad was for a term of twenty-five years, and the same is still in full force, effect and operation.

On the twenty-second day of September, 1901, the board of control of the city of Hamilton, Ohio, which board was and is the successor of said city council, passed an ordinance granting to the plaintiff in error, The Hamilton, Glendale & Cincinnati Traction Co., the right to construct, maintain and operate a street railroad in, upon and along said East avenue, from Grand boulevard to John street, and by the terms and conditions of said last named ordinance said Hamilton, Glendale & Cincinnati Traction Co. was to construct its tracks with a gauge of five feet two and one-half inches, said tracks to be laid as near the center of said East avenue as practicable, the rails of its said track being placed in juxtaposition to the rails of the track of defendant in error, theretofore laid and constructed in said avenue; that is, the plaintiff in error was to place the east rail of its track along the right of way and road-bed and across and over the ties of defendant in error's road eight inches west of the east rail of said plaintiff in error's track, and to place the west rail of said plaintiff in error's track fourteen inches west of the west rail of said defendant in error's track; and to make excavation under the rails and between the ties on said defendant in error's road-bed for the purpose of constructing its said road by putting its ties therein and its rails thereon. The defendant in error, The Hamilton & Lindenwald Electric Transit Co., brought suit in the Court of Common Pleas of Butler County, Ohio, against the plaintiff in error, The Hamilton, Glendale & Cincinnati Traction Co., to enjoin it from constructing its said road in the manner above described, alleging and claiming in its petition that such construction would be in violation of its (plaintiff's) franchises and vested rights in and to said portion of East avenue then and theretofore used and occupied by it for the purposes of its street railway, under grant from the city council of said city of Hamilton. And that

such construction would interfere with the operation and maintainance of its said street railroad in, upon and along said portion of said East avenue, and would destroy its property rights and franchises and deprive it of its right to use the same and its rights under its grant from the city of Hamilton. The case was heard in the common pleas court and was afterward appealed to the Circuit Court of Butler County, Ohio.

On the trial in the circuit court the following judgment and decree was rendered by that court:

"It is therefore considered, adjudged and decreed by the court that the defendant be and it is hereby perpetually enjoined from occupying, constructing, laying or maintaining a street railroad in said East avenue, from Grand boulevard to John street, under the grant of the tenth day of August, 1901, made by the board of control of the said city of Hamilton, unless the defendant acquires the right by appropriation; and this order is made without prejudice, if the defendant has the right so to do; and it is further ordered that the plaintiff recover its costs herein, taxed a $——; to all of which the defendant excepts."

The plaintiff in error seeks, by the present proceeding, to obtain a reversal of this judgment and decree of the circuit court.

*Burch & Johnson* and *John W. Warrington,* for plaintiff in error.

*Shepherd & Shaffer,* for defendant in error.

CREW, J.; DAVIS, SHAUCK and PRICE, JJ., concur.

On the trial of this case in the circuit court, the court on the application of the defendant, The Hamilton, Glendale & Cincinnati Traction Company, made and stated its finding of facts separately from its conclusions of law. It found and stated as its conclusions of fact:

"That the plaintiff owns and is operating a street railroad in the city of Hamilton under grant duly made to it, over and along East avenue, in said city of Hamilton, from Grand boulevard to John street and northwardly beyond, and that said street railroad is constructed in, on and along the center of said East avenue, and that the same has been in operation for more than ten years last past; that the construction of defendant's road by straddling the west rail of the tracks of the plaintiff's

road and by placing their ties between and in and upon the road-bed of the said plaintiff's road as now constructed, would be an interference with the franchises and vested rights of said plaintiff company. This finding is without prejudice to the defendant appropriating the rights, if authorized by law so to do."

And as its conclusions of law:

"The court finds as a conclusion of law that the defendant has no right to interfere with the franchises or vested rights of The Hamilton & Lindenwald Electric Transit Co.. by placing its tracks as it is proposed and intended to be done, or straddle the tracks of the plaintiff company which now occupies the center of East avenue from Grand boulevard to John street."

The diagram and map will show the proposed plan of construction of the track and road of plaintiff in error in and along said East avenue, and will serve to illustrate the relative position and location of the same, if constructed, to the road and tracks of the defendant in error.

It is conceded in this case by counsel for plaintiff in error that the finding of facts as made by the circuit court was not only warranted by the evidence, but that "the facts as found are absolutely true"; but it is claimed and argued by them that the court's deduction therefrom and its application of the law to the facts so found is "logically and legally untrue", for the reason as they insist that The Hamilton & Lindenwald Electric Transit Co. had no private property in its road-bed or right of way, and that it had not, nor could it have any frachise or vested interest or right in any other than its physical, tangible property, such as its tracks, ties and other structures placed upon and over its road-bed for the purpose of enabling it to maintain and operate its street railway thereon, and that inasmuch as no part of said property would be taken or used in the construction of plaintiff in error's railway, in the manner proposed, the plaintiff in error under its grant from the board of control of the city of Hamilton of August 10, 1901, has the right to enter upon, occupy and use the road-bed of defendant in error, in the construction and operation of its proposed road, without legally appropriating such right and without making or paying any compensation therefor to said The Hamilton &

Lindenwald Electric Transit Co. Whether it may rightfully do this is the question here presented for determination. The power to regulate and control the public streets and avenues in the municipalities of this state is by statute lodged in the municipal authorities, and under the general statutory powers conferred upon such authorities in each municipality to control the use of the streets within its corporate limits and to prescribe the terms and conditions upon which they may be used and occupied by street railways it can not be doubted that the local authorities of each municipality may, in the exercise of such power, grant to a street railway company the use of its streets for railway purposes, and may designate and prescribe the particular streets and avenues that shall be subject to such use, and the particular part of each upon which the tracks of such company shall be constructed and laid. By the ordinance of August 4, 1891, the city of Hamilton granted to The Hamilton & Lindenwald Transit Co. a certain franchise, whereby said company was authorized to construct its street railway in, over and upon certain of the streets and avenues of said city of Hamilton, among which was East avenue in said city; and by the terms and conditions of said grant said railway was to be located and constructed as near the center of said East avenue as practicable. This grant was accepted by The Hamilton & Lindenwald Transit Co., and its street railway was constructed in conformity with the terms and conditions of said grant, and as found by the circuit court for more than ten years said street railway has been, and it still is operated and maintained by said company over and along said East avenue. Whether then, any vested or exclusive property rights were acquired by The Hamilton & Lindenwald Transit Co. by virtue of said grant and its subsequent possession taken under it, in or to that part of East avenue actually occupied and used by it in the construction and operation of its said street railway, is the primary and controlling question in this case. That a city council may not by express grant give to a street railway company the absolute and exclusive right to occupy and use the streets of the city for street railway purposes, thus creating a monopoly, would seem now in this state to be well settled, and that the city council of the city of Hamilton did not by the making of said grant to The

Hamilton & Lindenwald Transit Co. exhaust its powers, or deprive itself or its successors of the right to make additional grants to other street railway companies for like purposes in and to the *unoccupied* portions of the same street or avenue, would seem to be abundantly sustained by the authorities. But it is, we think, equally well settled that where the right is given by ordinance to a street railway company to occupy and use particular parts of certain streets, and the grant so made is accepted and acted upon by the grantee, that the city authorities are thereafter, so long as said grant remains in full force, unforfeited and unrevoked, without right or authority to grant to another street railway company for like use, the right to have and occupy without appropriation or the making of compensation therefor to the first grantee, precisely the same ground, or right of way, first granted. To permit this would be to sanction and allow the impairment of the obligation of an existing contract by subsequent municipal legislation or grant. This may not rightfully be done. Cooley's Const. Lim., 383; *New Orleans Gas Co.* v. *Louisiana Light Co.*, 115 U. S., 650, 672; *City Railway Co.* v. *Citizens Railroad Co.*, 166 U. S., 557; *Detroit* v. *Detroit Citizens St. Ry. Co.*, 14 U. S., 368; *Canal Co.* v. *Railroad Co.*, 4 Gill and Johns., 1; *The State, ex rel, etc.*, v. *Gas Light & Coke Co.*, 18 Ohio St., 262, 292; *The Brooklyn Central Railroad Co.* v. *The Brooklyn City Railroad Co.*, 32 Barb., 358.

While it is undoubtedly true that a street railway company under a grant authorizing it to occupy and use certain streets for the purpose of constructing, operating and maintaining thereon its street railway, acquires no fee in the soil upon which its road-bed is constructed and its ties and tracks are laid, it nevertheless does acquire therein a franchise and easement, which becomes and is its private property, and it has the right, during the life of the grant, to the possession and enjoyment of that franchise and easement without interruption or obstruction from any other company, until such time at least as it may voluntarily surrender the same, or be legally divested thereof by an authorized appropriation and the payment of full compensation therefor, as required by the Constitution and laws of the state of Ohio. The right which the grantee acquires by such grant is more than a mere license; it is a vested property right,

in the nature of a franchise or easement in and to the particular portion of the street designated in the grant itself; and such grant carries with it the right of exclusive occupancy and user of that portion of the street, for the purposes for which it is granted, in so far as such exclusive occupancy and user are consistent with the welfare and convenience of the general public; and where, as in this case, there are conflicting claims asserted by rival companies, each claiming the same location under grant from the city authorities, and for the same character of use, such claims, even were both grants authorized, should be settled and determined by applying the rule, that the first of said grantees to rightfully occupy the street has the superior and better claim of right thereto. Judge Elliott, in discussing this question in his valuable work on Roads and Streets, at Section 750, says:

"If the company which secures the first grant actually occupies the streets it is authorized to use, then there is much reason for affirming that its right to the part of the street actually occupied and used is permanent and exclusive. By actually taking possession of the street and using it for the accommodation of the public, the company first in point of time does such acts as vests its rights."

The rule as thus laid down by Judge Elliott is not in conflict with the spirit and policy of the law which forbids municipal corporations from creating monopolies by favoring one corporation to the exclusion of another. As said by the court in the case of *The Indianapolis Cable St. Ry. Co.* v. *The Citizens St. Ry. Co.,* 127 Ind., 388:

"Many things which are lawful are from their nature and of necessity monopolies. * * * As a street railway company has no legal right to lay its track upon the streets of a city without the permission of the common council, if the city should grant such right to one company and refuse to grant it to another, the company to which the right was granted would have a monopoly, until such time as the common council should grant a similar right to some other person or company. So if the common council should grant to a street railroad company the right to lay its track on certain streets which were too narrow to admit of being occupied by other street railroad tracks, such company would have a monopoly of such streets. It is plain therefore, that while monopolies, as a general rule, are

unlawful, there are many exceptions to the rule. The rule applies only to such things as are of common right and is never to be applied to such things as are in their nature a monopoly.''

Again, it is said in Elliott on Roads and Streets, Section 746:

''To deny the power of the Legislature to make such a grant would lead to the unwarranted conclusion that in no case can the Legislature grant the right to lay or operate a street railroad in a road or street, for if the power to make such a grant be conceded, it necessarily and unavoidably results that the occupancy of the part of the road or street is exclusive, as two railroads can not occupy the same space. But it does not follow from this that a monopoly is created, for other parts of the road or street may be granted to competing lines.   *   *   * The effect of a grant to use a designated part of a highway is to license the company first in point of time to occupy and use the designated space, but it does not follow from this that the statute creates a monopoly since others may occuy other parts of the same highway.''

The grant from the city authorities of the city of Hamilton to The Hamilton & Lindenwald Electric Transit Co. being then a valid grant, whatever the nature and extent of the right and interest acquired thereunder by said company to that particular part of East avenue included in said grant and subsequently possessed and occupied by said company, it follows, that whatever interest it did acquire is its private property, although acquired and held for a public use, and is, therefore, within the protection of the constitutional prohibition ''that private property shall not be taken for public uses without just compensation.''

It remains then only to consider whether the construction of plaintiff in error's railway in the manner proposed, viz, by placing one of the rails of plaintiff in error's track on the road-bed and between the two rails of defendant in error's track, would constitute and be a taking of defendant in error's property within the constitutional meaning of that term. To constitute a taking of property it is not necessary that there should be an exclusive appropriation, a total assumption of possession, or an absolute and total conversion of the entire property. One of the valuable incidents of absolute property is the right of user, and this right of user necessarily includes

the right and power to exclude others from its use. Hence any serious abridgement or interruption of the common and necessary use of property may amount in law to a taking and entitle the owner to compensation.

"A partial, but substantial, restriction of the right of user may not annihilate all the owner's rights of property in the land, but it is none the less true that a part of his property is taken. Taking a part is as much forbidden by the Constitution as taking the whole. The difference is only one of degree; the *quantum* of interest may vary, but the principle is the same." Wood's Railway Law, Section 231.

In this case the interruption and injury that would necessarily result to the use of defendant in error's property, is at once manifest from the nature of the right claimed by plaintiff in error, for it is not susceptible of doubt that the imposition of a portion of plaintiff in error's track upon the road-bed and track of defendant in error, would be productive of delay and obstruction to the cars of the latter in the reasonable and necessary operation of its road. Indeed the obstruction and delay would be precisely the same as if the two companies were running and operating their cars over the same track. Yet plaintiff in error would admittedly be without right to run its cars over the tracks of defendant in error without its consent, or unless it should first have obtained the right so to do by an authorized appropriation.

Upon the facts of this case as found by the circuit court, we are of opinion that the defendant in error was entitled to the injunction prayed for, and the judgment of the circuit court is therefore

*Affirmed.*